**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| REALTIME DATA LLC d/b/a IXO, | |
| Plaintiff, | C.A. No. |
| v. | **JURY TRIAL DEMANDED** |
| EGNYTE, INC., | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT AGAINST EGNYTE, INC.

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.* in which Plaintiff Realtime Data LLC d/b/a IXO ("Plaintiff," "Realtime," or "IXO") makes the following allegations against Defendants Egnyte, Inc. ("Egnyte" or "Defendant"):

## PARTIES

1.      Realtime is a limited liability company organized under the laws of the State of New York.  Realtime principal place of business is at 81 Main Street, Suite 209, White Plains, NY 10601. Since the 1990s, Realtime has researched and developed specific solutions for data compression, including, for example, those that increase the speeds at which data can be stored and accessed.  As recognition of its innovations rooted in this technological field, Realtime has been awarded over 50 United States patents.  Realtime has licensed patents in this portfolio to many of the world's leading technology companies. The patents-in-suit relate to Realtime's development of advanced systems and methods for fast and efficient data compression using numerous innovative compression techniques based on, for example, particular attributes of the data.

2.      On information and belief, Egnyte is a Delaware corporation with its principal place of business at 1350 W. Middlefield Road, Mountain View, CA  94043. Egnyte can be served through its registered agent, Incorporating Services, Ltd. 3500 S. DuPont Highway, Dover, Delaware 19901.

## JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.      This Court has personal jurisdiction over Defendant Egnyte in this action because Egnyte is incorporated in Delaware and has committed acts within the District of Delaware giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Egnyte would not offend traditional notions of fair play and substantial justice.  Egnyte, directly and through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the asserted patents.

5.      Venue is proper in this district under 28 U.S.C. § 1400(b).   Upon information and belief, Egnyte is incorporated in Delaware, has transacted business in the District of Delaware, and has committed acts of direct and indirect infringement in the District of Delaware.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 9,054,728

6.      Plaintiff realleges and incorporates by reference paragraphs 1-5 above, as if fully set forth herein.

7.     Plaintiff Realtime is the owner by assignment of United States Patent No. 9,054,728 ("the '728 Patent") entitled "Data compression systems and methods."  The '728 Patent was duly and legally issued by the United States Patent and Trademark Office on June 9, 2015.  A true and correct copy of the '728 Patent is included as Exhibit A.

8.     On information and belief, Egnyte has offered for sale, sold and/or imported into the United States Egnyte products and services that infringe the '728 Patent, and continues to do so. By way of illustrative example, these infringing products and services include, without limitation, Egnyte's cloud storage solutions, including, without limitation, HybridCloud, Egnyte's POP centers, Egnyte's cloud file-server solutions for ReadyNAS Pro and AMAG, and the system hardware on which they operate, and all versions and variations thereof since the issuance of the '728 Patent (the "Accused Instrumentalities").

9.     On information and belief, Egnyte has directly infringed and continues to infringe the '728 Patent, for example, by making, selling, offering for sale, and/or importing the Accused Instrumentalities, and through its own use and testing of the Accused Instrumentalities, which constitute systems for compressing data claimed by Claim 1 of the '728 Patent, comprising: a processor; one or more content dependent data compression encoders; and a single data compression encoder; wherein the processor is configured: to analyze data within a data block to identify one or more parameters or attributes of the data wherein the analyzing of the data within the data block to identify the one or more parameters or attributes of the data excludes analyzing based solely on a descriptor that is indicative of the one or more parameters or attributes of the data within the data block; to perform content dependent data compression with the one or more content dependent data compression encoders if the one or more parameters or attributes

of the data are identified; and to perform data compression with the single data compression encoder, if the one or more parameters or attributes of the data are not identified. Upon information and belief, Egnyte uses the Accused Instrumentalities, which are infringing systems, for its own internal non-testing business purposes, while testing the Accused Instrumentalities, and while providing technical support and repair services for the Accused Instrumentalities to Egnyte's customers.

10.     On information and belief, Egnyte has had knowledge of the '728 Patent since at least the filing of the original Complaint in *Realtime Data v. Egnyte, Inc.*, Case No. 17-1750-CFC on December 5, 2017 or shortly thereafter, and on information and belief, Egnyte knew of the '728 Patent and knew of its infringement, including by way of the filing of that Complaint. Moreover, based on a stipulation filed in that case (D.I. 50) this action is "afforded for the purposes of damages" a filing date of December 5, 2017.

11.     Egnyte's affirmative acts of making, using, selling, offering for sale, and/or importing the Accused Instrumentalities have induced and continue to induce users of the Accused Instrumentalities to use the Accused Instrumentalities in their normal and customary way on compatible systems to infringe Claim 1 of the '728 Patent, knowing that when the Accused Instrumentalities are used in their ordinary and customary manner with such compatible systems, such systems constitute infringing systems for compressing data comprising; a processor; one or more content dependent data compression encoders; and a single data compression encoder; wherein the processor is configured: to analyze data within a data block to identify one or more parameters or attributes of the data wherein the analyzing of the data within the data block to identify the one or more parameters or attributes of the data excludes analyzing based solely on a descriptor that is indicative of

the one or more parameters or attributes of the data within the data block; to perform content dependent data compression with the one or more content dependent data compression encoders if the one or more parameters or attributes of the data are identified; and to perform data compression with the single data compression encoder, if the one or more parameters or attributes of the data are not identified.  For example, Egnyte explains to customers the benefits of using the Accused Instrumentalities: "These centers offer the latest network technologies (i.e., compression and network deduplication) to circumvent network bandwidth constraints and enhance the transfer speeds for this branch office location."  *See, e.g.*, https://www.egnyte.com/global-network-acceleration.html.   For similar reasons, Egnyte also induces its customers to use the Accused Instrumentalities to infringe other claims of the '728 Patent.  Egnyte specifically intended and was aware that the normal and customary use of the Accused Instrumentalities on compatible systems would infringe the '728 Patent.  Egnyte performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '728 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.  On information and belief, Egnyte engaged in such inducement to promote the sales of the Accused Instrumentalities, *e.g.,* through Egnyte's user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '728 Patent.  Accordingly, Egnyte has induced and continues to induce end users of the accused products to use the accused products in their ordinary and customary way with compatible systems to make and/or use systems infringing the '728 Patent, knowing that such use of the Accused Instrumentalities with compatible systems will result in infringement of the '728 Patent.

12.     The Accused Instrumentalities include a system for compressing data, comprising a processor.  For example, the Egnyte products and services include servers with processors and equipment that operates with Egnyte's storage infrastructure includes processors.     *See, e.g.,*   https://helpdesk.egnyte.com/hc/en-us/articles/203250804-Supported-NETGEAR-ReadyNAS-Hardware.

13.     The Accused Instrumentalities include a system for compressing data, comprising one or more content dependent data compression encoders.  For example, the Accused Instrumentalities perform block-level deduplication, which is a content dependent data compression encoder.  *See, e.g.*, https://www.egnyte.com/global-network-acceleration.html ("These centers offer the latest network technologies (i.e., compression and network deduplication) to circumvent network bandwidth constraints and enhance the transfer speeds for this branch office location."); https://www.egnyte.com/blog/2012/05/egnyte-in-the-news-netgear-readydata-unified-storage-aimed-at-smbs/ ("The family offers a healthy array of features including thin provisioning, compression and deduplication of block (storage area network, or SAN) and file (network-attached storage, or NAS) data, while also allowing users to leverage thin provisioning in virtual environments, replicate files and databases to off-site locations and recover data with unlimited point-in-time snapshots."); https://www.egnyte.com/blog/2011/04/egnyte-in-news-3/ ("AMAG stores about 6 terabytes of data in the Egnyte cloud, which, after compression and data deduplication, amounts to about 2.5 TB of S3 storage"). Performing deduplication results in compression by representing data with fewer bits.

14.     The Accused Instrumentalities comprise a single data compression encoder.
*See, e.g.*, https://www.egnyte.com/global-network-acceleration.html ("These centers offer
the     latest     network     technologies     (i.e.,     compression     …");
https://www.egnyte.com/blog/2012/05/egnyte-in-the-news-netgear-readydata-unified-
storage-aimed-at-smbs/ ("The family offers a healthy array of features including …
compression … ."); https://www.egnyte.com/blog/2011/04/egnyte-in-news-3/ ("AMAG
stores about 6 terabytes of data in the Egnyte cloud, which, after compression and data
deduplication, amounts to about 2.5 TB of S3 storage").

15.     The Accused Instrumentalities analyze data within a data block to identify
one or more parameters or attributes of the data, for example, whether the data is
duplicative of data previously transmitted and/or stored, where the analysis does not rely
only on the descriptor.     *See, e.g.*,     https://www.egnyte.com/global-network-
acceleration.html ("These centers offer the latest network technologies (i.e., compression
and network deduplication) to circumvent network bandwidth constraints and enhance the
transfer     speeds     for     this     branch     office     location.");
https://www.egnyte.com/blog/2012/05/egnyte-in-the-news-netgear-readydata-unified-
storage-aimed-at-smbs/ ("The family offers a healthy array of features including thin
provisioning, compression and deduplication of block (storage area network, or SAN) and
file (network-attached storage, or NAS) data, while also allowing users to leverage thin
provisioning in virtual environments, replicate files and databases to off-site locations and
recover     data     with     unlimited     point-in-time     snapshots.");
https://www.egnyte.com/blog/2011/04/egnyte-in-news-3/ ("AMAG stores about 6

terabytes of data in the Egnyte cloud, which, after compression and data deduplication, amounts to about 2.5 TB of S3 storage").

16.     The Accused Instrumentalities perform content dependent data compression with the one or more content dependent data compression encoders if the one or more parameters or attributes of the data are identified.   *See, e.g.*, https://www.egnyte.com/global-network-acceleration.html ("These centers offer the latest network technologies (i.e., compression and network deduplication) to circumvent network bandwidth constraints and enhance the transfer speeds for this branch office location."); https://www.egnyte.com/blog/2012/05/egnyte-in-the-news-netgear-readydata-unified-storage-aimed-at-smbs/ ("The family offers a healthy array of features including thin provisioning, compression and deduplication of block (storage area network, or SAN) and file (network-attached storage, or NAS) data, while also allowing users to leverage thin provisioning in virtual environments, replicate files and databases to off-site locations and recover     data     with     unlimited     point-in-time     snapshots."); https://www.egnyte.com/blog/2011/04/egnyte-in-news-3/ ("AMAG stores about 6 terabytes of data in the Egnyte cloud, which, after compression and data deduplication, amounts to about 2.5 TB of S3 storage").

17.     The Accused Instrumentalities perform data compression with the single data compression encoder, if the one or more parameters or attributes of the data are not identified.   *See, e.g.*, https://www.egnyte.com/global-network-acceleration.html ("These centers     offer     the     latest     network     technologies     (i.e.,     compression     …"); https://www.egnyte.com/blog/2012/05/egnyte-in-the-news-netgear-readydata-unified-storage-aimed-at-smbs/ ("The family offers a healthy array of features including …

compression … .");  https://www.egnyte.com/blog/2011/04/egnyte-in-news-3/ ("AMAG stores about 6 terabytes of data in the Egnyte cloud, which, after compression and data deduplication, amounts to about 2.5 TB of S3 storage").

18.     Egnyte also infringes other claims of the '728 Patent, directly and through inducing infringement and contributory infringement, for similar reasons as explained above with respect to Claim 1 of the '728 Patent.

19.     On information and belief, use of the Accused Instrumentalities in their ordinary and customary fashion results in infringement of the methods claimed by the '728 Patent.

20.     By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, and touting the benefits of using the Accused Instrumentalities' compression features, Egnyte has injured Realtime and is liable to Realtime for infringement of the '728 Patent pursuant to 35 U.S.C. § 271.

21.     As a result of Egnyte's infringement of the '728 Patent, Plaintiff Realtime is entitled to monetary damages in an amount adequate to compensate for Egnyte's infringement, but in no event less than a reasonable royalty for the use made of the invention by Egnyte, together with interest and costs as fixed by the Court.

### COUNT II
### INFRINGEMENT OF U.S. PATENT NO. 9,667,751

22.     Plaintiff realleges and incorporates by reference paragraphs 1-21 above, as if fully set forth herein.

23.     Plaintiff Realtime is the owner by assignment of United States Patent No. 9,667,751 ("the '751 Patent") entitled "Data feed acceleration."  The '751 Patent was duly

and legally issued by the United States Patent and Trademark Office on May 30, 2017.  A true and correct copy of the '751 Patent is included as Exhibit B.

24.     On information and belief, Egnyte has offered for sale, sold and/or imported into the United States Egnyte products and services that infringe the '751 Patent, and continues to do so.  By way of illustrative example, these infringing products and services include, without limitation, Egnyte's cloud storage solutions, including, without limitation, HybridCloud, Egnyte's POP centers, Egnyte's cloud file-server solutions for ReadyNAS Pro and AMAG, and the system hardware on which they operate, and all versions and variations thereof since the issuance of the '751 Patent (the "Accused Instrumentalities").

25.     On information and belief, Egnyte has directly infringed and continues to infringe the '751 Patent, for example, through its own use and testing of the Accused Instrumentalities, which in the ordinary course of their operation form a system for compressing data claimed by Claim 25 of the '751 Patent, including: a data server implemented on one or more processors and one or more memory systems; the data server configured to analyze content of a data block to identify a parameter, attribute, or value of the data block that excludes analysis based solely on reading a descriptor; the data server configured to select an encoder associated with the identified parameter, attribute, or value; the data server configured to compress data in the data block with the selected encoder to produce a compressed data block, wherein the compression utilizes a state machine; and the data server configured to store the compressed data block; wherein the time of the compressing the data block and the storing the compressed data block is less than the time of storing the data block in uncompressed form.  Upon information and belief, Egnyte uses the Accused Instrumentalities, which are infringing systems, for its own internal non-

testing business purposes, while testing the Accused Instrumentalities, and while providing technical support and repair services for the Accused Instrumentalities to Egnyte's customers.

26.     On information and belief, Egnyte has had knowledge of the '751 Patent since at least the filing of the original Complaint in *Realtime Data v. Egnyte, Inc.*, Case No. 17-1750-CFC on December 5, 2017 or shortly thereafter, and on information and belief, Egnyte knew of the '751 Patent and knew of its infringement, including by way of the filing of that Complaint. Moreover, based on a stipulation filed in that case (D.I. 50) this action is "afforded for the purposes of damages" a filing date of December 5, 2017.

27.     Upon information and belief, Egnyte's affirmative acts of making, using, and selling the Accused Instrumentalities, and providing implementation services and technical support to users of the Accused Instrumentalities, have induced and continue to induce users of the Accused Instrumentalities to use them in their normal and customary way to infringe Claim 25 of the '751 Patent by making or using a data server implemented on one or more processors and one or more memory systems; the data server configured to analyze content of a data block to identify a parameter, attribute, or value of the data block that excludes analysis based solely on reading a descriptor; the data server configured to select an encoder associated with the identified parameter, attribute, or value; the data server configured to compress data in the data block with the selected encoder to produce a compressed data block, wherein the compression utilizes a state machine; and the data server configured to store the compressed data block; wherein the time of the compressing the data block and the storing the compressed data block is less than the time of storing the data block in uncompressed form. For example, Egnyte explains to customers the benefits

of using the Accused Instrumentalities: "These centers offer the latest network technologies (i.e., compression and network deduplication) to circumvent network bandwidth constraints and enhance the transfer speeds for this branch office location." *See, e.g.*, https://www.egnyte.com/global-network-acceleration.html.  For similar reasons, Egnyte also induces its customers to use the Accused Instrumentalities to infringe other claims of the '751 Patent.  Egnyte specifically intended and was aware that these normal and customary activities would infringe the '751 Patent.  Egnyte performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '751 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.  On information and belief, Egnyte engaged in such inducement to promote the sales of the Accused Instrumentalities.  Accordingly, Egnyte has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '751 Patent, knowing that such use constitutes infringement of the '751 Patent.

28.    The Accused Instrumentalities include a system for compressing data. *See, e.g.*, https://www.egnyte.com/global-network-acceleration.html ("These centers offer the latest network technologies (i.e., compression and network deduplication) to circumvent network bandwidth constraints and enhance the transfer speeds for this branch office location."); https://www.egnyte.com/blog/2012/05/egnyte-in-the-news-netgear-readydata-unified-storage-aimed-at-smbs/ ("The family offers a healthy array of features including thin provisioning, compression and deduplication of block (storage area network, or SAN) and file (network-attached storage, or NAS) data, while also allowing users to leverage thin provisioning in virtual environments, replicate files and databases to off-site locations and

recover       data       with       unlimited       point-in-time       snapshots.");
https://www.egnyte.com/blog/2011/04/egnyte-in-news-3/   ("AMAG   stores   about   6
terabytes of data in the Egnyte cloud, which, after compression and data deduplication,
amounts to about 2.5 TB of S3 storage"). Performing deduplication results in compression
by representing data with fewer bits.

29.    The Accused Instrumentalities include a data server implemented on one or
more processors and one or more memory systems.  For example, the Egnyte products and
services include servers with processors and equipment that operates with Egnyte's storage
infrastructure   includes   processors.    *See, e.g.,*   https://helpdesk.egnyte.com/hc/en-
us/articles/203250804-Supported-NETGEAR-ReadyNAS-Hardware.        The        Accused
Instrumentalities also use one or more memory systems, including storage media for cloud
storage.

30.    The Accused Instrumentalities include a data server configured to analyze
content of a data block to identify a parameter, attribute, or value of the data block that
excludes   analysis   based   solely   on   reading   a   descriptor.    *See, e.g.*,
https://www.egnyte.com/global-network-acceleration.html ("These centers offer the latest
network technologies (i.e., compression and network deduplication) to circumvent network
bandwidth constraints and enhance the transfer speeds for this branch office location.");
https://www.egnyte.com/blog/2012/05/egnyte-in-the-news-netgear-readydata-unified-
storage-aimed-at-smbs/ ("The family offers a healthy array of features including thin
provisioning, compression and deduplication of block (storage area network, or SAN) and
file (network-attached storage, or NAS) data, while also allowing users to leverage thin
provisioning in virtual environments, replicate files and databases to off-site locations and

recover        data        with        unlimited        point-in-time        snapshots."); https://www.egnyte.com/blog/2011/04/egnyte-in-news-3/ ("AMAG stores about 6 terabytes of data in the Egnyte cloud, which, after compression and data deduplication, amounts to about 2.5 TB of S3 storage"). Performing deduplication results in compression by representing data with fewer bits.

31.     The Accused Instrumentalities include a data server configured to select an encoder associated with the identified parameter, attribute, or value. For example, the Accused Instrumentalities select between deduplication or other compression. *See, e.g.*, https://www.egnyte.com/global-network-acceleration.html ("These centers offer the latest network technologies (i.e., compression and network deduplication) to circumvent network bandwidth constraints and enhance the transfer speeds for this branch office location."); https://www.egnyte.com/blog/2012/05/egnyte-in-the-news-netgear-readydata-unified-storage-aimed-at-smbs/ ("The family offers a healthy array of features including thin provisioning, compression and deduplication of block (storage area network, or SAN) and file (network-attached storage, or NAS) data, while also allowing users to leverage thin provisioning in virtual environments, replicate files and databases to off-site locations and recover        data        with        unlimited        point-in-time        snapshots."); https://www.egnyte.com/blog/2011/04/egnyte-in-news-3/ ("AMAG stores about 6 terabytes of data in the Egnyte cloud, which, after compression and data deduplication, amounts to about 2.5 TB of S3 storage"). Performing deduplication results in compression by representing data with fewer bits.

32.     The Accused Instrumentalities include a data server configured to compress data in the data block with the selected encoder to produce a compressed data block,

14

wherein the compression utilizes a state machine. *See, e.g.*, https://www.egnyte.com/global-network-acceleration.html ("These centers offer the latest network technologies (i.e., compression …"); https://www.egnyte.com/blog/2012/05/egnyte-in-the-news-netgear-readydata-unified-storage-aimed-at-smbs/ ("The family offers a healthy array of features including … compression … ."); https://www.egnyte.com/blog/2011/04/egnyte-in-news-3/ ("AMAG stores about 6 terabytes of data in the Egnyte cloud, which, after compression and data deduplication, amounts to about 2.5 TB of S3 storage").

33.     The Accused Instrumentalities include a data server configured to store the compressed data block.  For example, the Accused Instrumentalities have storage media for cloud storage.  Also, compressed data blocks are stored temporarily in volatile memory when they are created.

34.     The time of the compressing the data block and the storing the compressed data block in the Accused Instrumentalities is less than the time of storing the data block in uncompressed form.  Due to the data reduction and acceleration features of the specific compression algorithms used, the time of the compressing the data block and the storing the compressed data block is less than the time of storing the data block in uncompressed form.  *See, e.g.*, https://www.egnyte.com/global-network-acceleration.html ("These centers offer the latest network technologies (i.e., compression and network deduplication) to circumvent network bandwidth constraints and enhance the transfer speeds for this branch office location.").

35.    On information and belief, Egnyte also infringes, directly and through induced infringement, and continues to infringe other claims of the '751 Patent, for similar reasons as explained above with respect to Claim 25 of the '751 Patent.

36.    On information and belief, use of the Accused Instrumentalities in their ordinary and customary fashion results in infringement of the methods claimed by the '751 Patent.

37.    By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, and touting the benefits of using the Accused Instrumentalities' compression features, Egnyte has injured Realtime and is liable to Realtime for infringement of the '751 Patent pursuant to 35 U.S.C. § 271.

38.    As a result of Egnyte's infringement of the '751 Patent, Plaintiff Realtime is entitled to monetary damages in an amount adequate to compensate for Egnyte's infringement, but in no event less than a reasonable royalty for the use made of the invention by Egnyte, together with interest and costs as fixed by the Court.

## COUNT III
## INFRINGEMENT OF U.S. PATENT NO. 8,717,203

39.    Plaintiff realleges and incorporates by reference paragraphs 1-38 above, as if fully set forth herein.

40.    Plaintiff Realtime is the owner by assignment of United States Patent No. 8,717,203 ("the '203 Patent") entitled "Data compression systems and methods."  The '203 Patent was duly and legally issued by the United States Patent and Trademark Office on May 6, 2014.  A true and correct copy of the '203 Patent is included as Exhibit C.

41.    On information and belief, Egnyte has offered for sale, sold and/or imported into the United States Egnyte products and services that infringe the '203 Patent, and

continues to do so.  By way of illustrative example, these infringing products and services include, without limitation, Egnyte's cloud storage solutions, including, without limitation, HybridCloud, Egnyte's POP centers, Egnyte's cloud file-server solutions for ReadyNAS Pro and AMAG, and the system hardware on which they operate, and all versions and variations thereof since the issuance of the '203 Patent (the "Accused Instrumentalities").

42.    On information and belief, Egnyte has directly infringed and continues to infringe the '203 Patent, for example, through its own use and testing of the Accused Instrumentalities, which in the ordinary course of their operation form a system, claimed by Claim 14 of the '203 Patent, for decompressing one or more compressed data blocks included in one or more data packets using a data decompression engine, the one or more data packets being transmitted in sequence from a source that is internal or external to the data decompression engine, wherein a data packet from among the one or more data packets comprises a header containing control information followed by one or more compressed data blocks of the data packet.  The claimed system includes: a data decompression processor configured to analyze the data packet to identify one or more recognizable data tokens associated with the data packet, the one or more recognizable data identifying a selected encoder used to compress one or more data blocks to provide the one or more compressed data blocks, the encoder being selected based on content of the one or more data blocks on which a compression algorithm was applied; one or more decompression decoders configured to decompress a compressed data block from among the one or more compressed data blocks associated with the data packet based on the one or more recognizable data tokens; wherein: the one or more decompression decoders are further configured to decompress the compressed data block utilizing content dependent

17

data decompression to provide a first decompressed data block when the one or more recognizable data tokens indicate that the data block was encoded utilizing content dependent data compression; and the one or more decompression decoders are further configured to decompress the compressed data block utilizing content independent data decompression to provide a second decompressed data block when the one or more recognizable data tokens indicate that the data block was encoded utilizing content independent data compression; and an output interface, coupled to the data decompression engine, configured to output a decompressed data packet including the first or the second decompressed data block.   Upon information and belief, Egnyte uses the Accused Instrumentalities, which are infringing systems, for its own internal non-testing business purposes, while testing the Accused Instrumentalities, and while providing technical support and repair services for the Accused Instrumentalities to Egnyte's customers.

43.   On information and belief, Egnyte has had knowledge of the '203 Patent since at least the filing of the original Complaint in *Realtime Data v. Egnyte, Inc.*, Case No. 17-1750-CFC on December 5, 2017 or shortly thereafter, and on information and belief, Egnyte knew of the '203 Patent and knew of its infringement, including by way of the filing of that Complaint. Moreover, based on a stipulation filed in that case (D.I. 50) this action is "afforded for the purposes of damages" a filing date of December 5, 2017.

44.   Upon information and belief, Egnyte's affirmative acts of making, using, and selling the Accused Instrumentalities, and providing implementation services and technical support to users of the Accused Instrumentalities, have induced and continue to induce users of the Accused Instrumentalities to use them in their normal and customary way to infringe Claim 14 of the '203 Patent by making or using a system for decompressing,

one or more compressed data blocks included in one or more data packets using a data decompression engine, the one or more data packets being transmitted in sequence from a source that is internal or external to the data decompression engine, wherein a data packet from among the one or more data packets comprises a header containing control information followed by one or more compressed data blocks of the data packet the system claimed by Claim 14 of the '203 Patent, including: a data decompression processor configured to analyze the data packet to identify one or more recognizable data tokens associated with the data packet, the one or more recognizable data identifying a selected encoder used to compress one or more data blocks to provide the one or more compressed data blocks, the encoder being selected based on content of the one or more data blocks on which a compression algorithm was applied; one or more decompression decoders configured to decompress a compressed data block from among the one or more compressed data blocks associated with the data packet based on the one or more recognizable data tokens; wherein: the one or more decompression decoders are further configured to decompress the compressed data block utilizing content dependent data decompression to provide a first decompressed data block when the one or more recognizable data tokens indicate that the data block was encoded utilizing content dependent data compression; and the one or more decompression decoders are further configured to decompress the compressed data block utilizing content independent data decompression to provide a second decompressed data block when the one or more recognizable data tokens indicate that the data block was encoded utilizing content independent data compression; and an output interface, coupled to the data decompression engine, configured to output a decompressed data packet including the first or the second

decompressed data block.  For example, Egnyte explains to customers the benefits of using the Accused Instrumentalities: "These centers offer the latest network technologies (i.e., compression and network deduplication) to circumvent network bandwidth constraints and enhance the transfer speeds for this branch office location."   *See, e.g.*, https://www.egnyte.com/global-network-acceleration.html.  For similar reasons, Egnyte also induces its customers to use the Accused Instrumentalities to infringe other claims of the '203 Patent.  Egnyte specifically intended and was aware that these normal and customary activities would infringe the '203 Patent.  Egnyte performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '203 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.  On information and belief, Egnyte engaged in such inducement to promote the sales of the Accused Instrumentalities.  Accordingly, Egnyte has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '203 Patent, knowing that such use constitutes infringement of the '203 Patent.

45.    The Accused Instrumentalities form a system for decompressing one or more compressed data blocks included in one or more data packets using a data decompression engine, the one or more data packets being transmitted in sequence from a source that is internal or external to the data decompression engine.  The Accused Instrumentalities utilize multiple formats of compression to compress data. *See, e.g.*, https://www.egnyte.com/global-network-acceleration.html ("These centers offer the latest network technologies (i.e., compression and network deduplication) to circumvent network bandwidth constraints and enhance the transfer speeds for this branch office location.");

https://www.egnyte.com/blog/2012/05/egnyte-in-the-news-netgear-readydata-unified-storage-aimed-at-smbs/ ("The family offers a healthy array of features including thin provisioning, compression and deduplication of block (storage area network, or SAN) and file (network-attached storage, or NAS) data, while also allowing users to leverage thin provisioning in virtual environments, replicate files and databases to off-site locations and recover data with unlimited point-in-time snapshots."); https://www.egnyte.com/blog/2011/04/egnyte-in-news-3/ ("AMAG stores about 6 terabytes of data in the Egnyte cloud, which, after compression and data deduplication, amounts to about 2.5 TB of S3 storage").   To recover data from backup, the Accused Instrumentalities decompress the data.

46.     The data packets from among the one or more data packets in the Accused Instrumentalities include a header containing control information followed by one or more compressed data blocks of the data packet.   The header containing control information contains information used to determine which compression format was used to compress the data.   *See, e.g.*, https://www.egnyte.com/global-network-acceleration.html ("These centers offer the latest network technologies (i.e., compression and network deduplication) to circumvent network bandwidth constraints and enhance the transfer speeds for this branch office location."); https://www.egnyte.com/blog/2012/05/egnyte-in-the-news-netgear-readydata-unified-storage-aimed-at-smbs/ ("The family offers a healthy array of features including thin provisioning, compression and deduplication of block (storage area network, or SAN) and file (network-attached storage, or NAS) data, while also allowing users to leverage thin provisioning in virtual environments, replicate files and databases to off-site locations and recover data with unlimited point-in-time snapshots.");

https://www.egnyte.com/blog/2011/04/egnyte-in-news-3/ ("AMAG stores about 6 terabytes of data in the Egnyte cloud, which, after compression and data deduplication, amounts to about 2.5 TB of S3 storage").

47. The Accused Instrumentalities utilize multiple formats of compression to compress data for backup. *See, e.g.*, https://www.egnyte.com/global-network-acceleration.html ("These centers offer the latest network technologies (i.e., compression and network deduplication) to circumvent network bandwidth constraints and enhance the transfer speeds for this branch office location."); https://www.egnyte.com/blog/2012/05/egnyte-in-the-news-netgear-readydata-unified-storage-aimed-at-smbs/ ("The family offers a healthy array of features including thin provisioning, compression and deduplication of block (storage area network, or SAN) and file (network-attached storage, or NAS) data, while also allowing users to leverage thin provisioning in virtual environments, replicate files and databases to off-site locations and recover data with unlimited point-in-time snapshots."); https://www.egnyte.com/blog/2011/04/egnyte-in-news-3/ ("AMAG stores about 6 terabytes of data in the Egnyte cloud, which, after compression and data deduplication, amounts to about 2.5 TB of S3 storage").

48. To decompress the data, the Accused Instrumentalities include one or more decompression decoders configured to decompress a compressed data block from among the one or more compressed data blocks associated with the data packet based on the one or more recognizable data tokens. *See, e.g.*, https://www.egnyte.com/global-network-acceleration.html ("These centers offer the latest network technologies (i.e., compression and network deduplication) to circumvent network bandwidth constraints and enhance the

transfer speeds for this branch office location."); https://www.egnyte.com/blog/2012/05/egnyte-in-the-news-netgear-readydata-unified-storage-aimed-at-smbs/ ("The family offers a healthy array of features including thin provisioning, compression and deduplication of block (storage area network, or SAN) and file (network-attached storage, or NAS) data, while also allowing users to leverage thin provisioning in virtual environments, replicate files and databases to off-site locations and recover data with unlimited point-in-time snapshots."); https://www.egnyte.com/blog/2011/04/egnyte-in-news-3/ ("AMAG stores about 6 terabytes of data in the Egnyte cloud, which, after compression and data deduplication, amounts to about 2.5 TB of S3 storage").

49.    One of the compression formats in the Accused Instrumentalities is content dependent data decompression. *See, e.g.*, https://www.egnyte.com/global-network-acceleration.html ("These centers offer the latest network technologies (i.e., … deduplication) to circumvent network bandwidth constraints and enhance the transfer speeds for this branch office location."); https://www.egnyte.com/blog/2012/05/egnyte-in-the-news-netgear-readydata-unified-storage-aimed-at-smbs/ ("The family offers a healthy array of features including … deduplication of block (storage area network, or SAN) and file (network-attached storage, or NAS) data, while also allowing users to leverage thin provisioning in virtual environments, replicate files and databases to off-site locations and recover data with unlimited point-in-time snapshots."); https://www.egnyte.com/blog/2011/04/egnyte-in-news-3/ ("AMAG stores about 6 terabytes of data in the Egnyte cloud, which, after … data deduplication, amounts to about 2.5 TB of S3 storage").   The one or more decompression decoders in the Accused

Instrumentalities are further configured to decompress the compressed data block utilizing content dependent data decompression to provide a first decompressed data block when the one or more recognizable data tokens indicate that the data block was encoded utilizing content dependent data compression.

50.     One of the compression formats in the Accused Instrumentalities is content independent data decompression.   *See, e.g.*,  https://www.egnyte.com/global-network-acceleration.html ("These centers offer the latest network technologies (i.e., compression …");     https://www.egnyte.com/blog/2012/05/egnyte-in-the-news-netgear-readydata-unified-storage-aimed-at-smbs/ ("The family offers a healthy array of features including … compression … .");   https://www.egnyte.com/blog/2011/04/egnyte-in-news-3/ ("AMAG stores about 6 terabytes of data in the Egnyte cloud, which, after compression and data deduplication, amounts to about 2.5 TB of S3 storage").   The one or more decompression decoders in the Accused Instrumentalities are further configured to decompress the compressed data block utilizing content independent data decompression to provide a second decompressed data block when the one or more recognizable data tokens indicate that the data block was encoded utilizing content independent data compression.

51.     The Accused Instrumentalities include an output interface, coupled to the data decompression engine, configured to output a decompressed data packet including the first or the second decompressed data block.   For example, the Accused Instrumentalities include interfaces for LAN and WAN connections, such as Ethernet ports.   *See, e.g.*, https://www.egnyte.com/blog/2012/05/egnyte-in-the-news-netgear-readydata-unified-storage-aimed-at-smbs/.   Furthermore, the Accused Instrumentalities have memory, such

as volatile memory, into which decompressed data can be written.  On information and belief, all of the Accused Instrumentalities have network connections that provide an output interface, coupled to the data decompression engine, configured to output a decompressed data packet including the first or the second decompressed data block.

52.     On information and belief, Egnyte also infringes, directly and through induced infringement, and continues to infringe other claims of the '203 Patent, for similar reasons as explained above with respect to Claim 14 of the '203 Patent.

53.     On information and belief, use of the Accused Instrumentalities in their ordinary and customary fashion results in infringement of the methods claimed by the '203 Patent.

54.     By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, and touting the benefits of using the Accused Instrumentalities' compression features, Egnyte has injured Realtime and is liable to Realtime for infringement of the '203 Patent pursuant to 35 U.S.C. § 271.

55.     As a result of Egnyte's infringement of the '203 Patent, Plaintiff Realtime is entitled to monetary damages in an amount adequate to compensate for Egnyte's infringement, but in no event less than a reasonable royalty for the use made of the invention by Egnyte, together with interest and costs as fixed by the Court.

## COUNT IV
## INFRINGEMENT OF U.S. PATENT NO. 9,116,908

56.     Plaintiff Realtime realleges and incorporates by reference paragraphs 1-55 above, as if fully set forth herein.

57.     Plaintiff Realtime is the owner by assignment of United States Patent No. 9,116,908 ("the '908 Patent") entitled "System and methods for accelerated data storage

and retrieval." The '908 Patent was duly and legally issued by the United States Patent and Trademark Office on August 25, 2015, and Claims 1, 2, 4-6, 9, 11, 21, 22, 24, and 25 of the '908 Patent confirmed as patentable in a Final Written Decision of the Patent Trial and Appeal Board on October 31, 2017. A true and correct copy of the '908 Patent is included as Exhibit D.

58. On information and belief, Egnyte has offered for sale, sold and/or imported into the United States Egnyte products and services that infringe the '908 Patent, and continues to do so. By way of illustrative example, these infringing products and services include, without limitation, Egnyte's cloud storage solutions, including, without limitation, HybridCloud, Egnyte's POP centers, Egnyte's cloud file-server solutions for ReadyNAS Pro and AMAG, and the system hardware on which they operate, and all versions and variations thereof since the issuance of the '908 Patent (the "Accused Instrumentality").

59. On information and belief, Egnyte has directly infringed and continues to infringe the '908 Patent, for example, through its own use and testing of the Accused Instrumentality, which constitutes a system comprising: a memory device; and a data accelerator configured to compress: (i) a first data block with a first compression technique to provide a first compressed data block; and (ii) a second data block with a second compression technique, different from the first compression technique, to provide a second compressed data block; wherein the compressed first and second data blocks are stored on the memory device, and the compression and storage occurs faster than the first and second data blocks are able to be stored on the memory device in uncompressed form. Upon information and belief, Egnyte uses the Accused Instrumentality, an infringing system, for its own internal non-testing business purposes, while testing the Accused Instrumentality,

and while providing technical support and repair services for the Accused Instrumentality to Egnyte's customers.

60.     On information and belief, use of the Accused Instrumentality in its ordinary and customary fashion results in infringement of the systems claimed by the '908 Patent.

61.     On information and belief, Egnyte has had knowledge of the '908 Patent since at least the filing of the original Complaint in *Realtime Data v. Egnyte, Inc.*, Case No. 17-1750-CFC on December 5, 2017 or shortly thereafter, and on information and belief, Egnyte knew of the '908 Patent and knew of its infringement, including by way of the filing of that Complaint. Moreover, based on a stipulation filed in that case (D.I. 50) this action is "afforded for the purposes of damages" a filing date of December 5, 2017.

62.     Upon information and belief, Egnyte's affirmative acts of making, using, and selling the Accused Instrumentalities, and providing implementation services and technical support to users of the Accused Instrumentalities, have induced and continue to induce users of the Accused Instrumentalities to use them in their normal and customary way to infringe Claim 1 of the '908 Patent by making or using a system comprising: a memory device; and a data accelerator configured to compress: (i) a first data block with a first compression technique to provide a first compressed data block; and (ii) a second data block with a second compression technique, different from the first compression technique, to provide a second compressed data block; wherein the compressed first and second data blocks are stored on the memory device, and the compression and storage occurs faster than the first and second data blocks are able to be stored on the memory device in uncompressed form. For example, Egnyte explains to customers the benefits of using the

Accused Instrumentalities: "These centers offer the latest network technologies (i.e., compression and network deduplication) to circumvent network bandwidth constraints and enhance the transfer speeds for this branch office location." *See, e.g.*, https://www.egnyte.com/global-network-acceleration.html.   For similar reasons, Egnyte also induces its customers to use the Accused Instrumentalities to infringe other claims of the '908 Patent.   Egnyte specifically intended and was aware that these normal and customary activities would infringe the '908 Patent.   Egnyte performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '908 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.   On information and belief, Egnyte engaged in such inducement to promote the sales of the Accused Instrumentalities. Accordingly, Egnyte has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '908 Patent, knowing that such use constitutes infringement of the '908 Patent.

63.   The Accused Instrumentality evidently includes a memory device and a data accelerator configured to compress: (i) a first data block with a first compression technique to provide a first compressed data block; and (ii) a second data block with a second compression technique, different from the first compression technique, to provide a second compressed data block.   *See, e.g.*, https://www.egnyte.com/global-network-acceleration.html ("These centers offer the latest network technologies (i.e., compression and network deduplication) to circumvent network bandwidth constraints and enhance the transfer speeds for this branch office location.");
https://www.egnyte.com/blog/2012/05/egnyte-in-the-news-netgear-readydata-unified-

storage-aimed-at-smbs/ ("The family offers a healthy array of features including thin provisioning, compression and deduplication of block (storage area network, or SAN) and file (network-attached storage, or NAS) data, while also allowing users to leverage thin provisioning in virtual environments, replicate files and databases to off-site locations and recover data with unlimited point-in-time snapshots."); https://www.egnyte.com/blog/2011/04/egnyte-in-news-3/ ("AMAG stores about 6 terabytes of data in the Egnyte cloud, which, after compression and data deduplication, amounts to about 2.5 TB of S3 storage").  For example, the Accused Instrumentalities also use one or more memory devices, including storage media for cloud storage.

64.    The Accused Instrumentality stores the compressed first and second data blocks on the memory device. For example, the Accused Instrumentalities have storage media at remote storage facilities controlled by data servers.  Also, compressed data blocks are stored temporarily in volatile memory when they are created.  The compression and storage occurs faster than the first and second data blocks are able to be stored on the memory device in uncompressed form. Due to the data reduction and acceleration features of the specific compression algorithms used, the time of the compressing the data block and the storing the compressed data block is less than the time of storing the data block in uncompressed form.  *See, e.g.*, https://www.egnyte.com/global-network-acceleration.html ("These centers offer the latest network technologies (i.e., compression and network deduplication) to circumvent network bandwidth constraints and enhance the transfer speeds for this branch office location.").

65.    On information and belief, Egnyte also infringes, directly and through induced infringement, and continues to infringe other claims of the '908 Patent, for similar

reasons as explained above with respect to Claim 1 of the '908 Patent.

66.    By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, and touting the benefits of using the Accused Instrumentalities' compression features, Egnyte has injured Realtime and is liable to Realtime for infringement of the '908 Patent pursuant to 35 U.S.C. § 271.

67.    As a result of Egnyte's infringement of the '908 Patent, Plaintiff Realtime is entitled to monetary damages in an amount adequate to compensate for Egnyte's infringement, but in no event less than a reasonable royalty for the use made of the invention by Egnyte, together with interest and costs as fixed by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Realtime respectfully requests that this Court enter:

a.    A judgment in favor of Plaintiff that Egnyte has infringed, either literally and/or under the doctrine of equivalents, the '728 Patent, the '751 Patent, the '203 Patent, and the '908 Patent;

b.    A permanent injunction prohibiting Egnyte from further acts of infringement of the '728 Patent, the '751 Patent, the '203 Patent, and the '908 Patent;

c.    A judgment and order requiring Egnyte to pay Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for its infringement of the '728 Patent, the '751 Patent, the '203 Patent, and the '908 Patent for the period of time in accordance with the parties' prior stipulation; and

d.    A judgment and order requiring Egnyte to provide an accounting and to pay supplemental damages to Realtime, including without limitation, prejudgment and post-judgment interest;

e.      A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Defendants; and

f.      Any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.


Dated: November 5, 2020                 BAYARD, P.A.

OF COUNSEL                               /s/ Stephen B. Brauerman
                                         Stephen B. Brauerman (No. 4952)
Marc A. Fenster (CA SBN 181067)          600 N. King Street, Suite 400
Reza Mirzaie (CA SBN 246953)             Wilmington, DE 19801
Paul A. Kroeger (CA SBN 229074)          Phone: (302) 655-5000
RUSS AUGUST & KABAT                      sbrauerman@bayardlaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
(310) 826-7474                           *Attorneys for Plaintiff Realtime Data LLC*
mfenster@raklaw.com                      *d/b/a IXO*
rmirzaie@raklaw.com
pkroeger@raklaw.com